ALICE SMITHSON, APPELLANT, V. WILLIAM SMITHSON, APPELLEE.

FILED SEPTEMBER 19, 1893. No. 5062.

1. Courts of Equity: JURISDICTION. Where courts of equity have assumed jurisdiction of a particular class of cases their jurisdiction in such cases will continue notwithstanding, in the development of legal means, redress becomes attainable in courts of law.

2. ———: REMEDIES NOT WITHIN PROVISIONS OF CODE. It is not the object of the Code to abolish existing remedies in cases where no provision is made therein for the prosecution of actions. Cases involving substantial rights, which are clearly outside the provision of the Code, may be prosecuted in accordance with the

practice previously recognized in courts of common law and equity.

3. ———: ———: DECREE OF DIVORCE: ACTION TO VACATE FOR FRAUD: PLEADING. In the petition it is alleged that the defendant therein, plaintiff's husband, in the year 1878, procured a decree of divorce in this state by means of fraud and perjured testimony. At said time and until recently the plaintiff resided in the state of Pennsylvania; that the only service upon her was by publication in a local newspaper and that she was not aware of the whereabouts of her husband or of said action or decree until the time of the filing of her petition eleven years later. *Held,* To state a cause of action, since the remedy by petition for a new trial under the Code is inadequate, and that the court which allowed the decree may, in the exercise of its general equity powers, vacate it upon proper showing of fraud and imposition.

4. ———: DECREE OBTAINED BY FRAUD: VALIDITY: COLLATERAL ATTACK. A judgment or decree procured by fraud is not void in the sense that it can be assailed in a strictly collateral proceeding, but is voidable merely at the election of the party defrauded thereby.

4. ———: ———: ACTION TO VACATE DIVORCE: JURISDICTION OF COURT IN DIFFERENT COUNTY. One S. procured a divorce from his wife by decree of the district court of Fillmore county in 1878 upon constructive service. In 1889 the latter commenced an action in the district court of Douglas county to set aside and annul the said decree, on the ground that it was procured by means of perjury, and for a divorce on the ground of desertion and failure to support. *Held,* That the cause of action is primarily to vacate the decree of the district court of Fillmore county, and that the district court of Douglas county does not have jurisdiction thereof.

APPEAL from the district court of Douglas county. Heard below before DAVIS, J.

*John L. Carr* and *Ambrose & Duffie,* for appellant.

*Charles Offutt* and *Ong & Jensen, contra.*

POST, J.

The parties to this action were married in the state of Pennsylvania in the year 1866, where they resided until

the year 1872. In the year last named the defendant removed to this state and took up a permanent residence in Fillmore county, where he has since that time continuously resided. In the month of September, 1878, he commenced an action for divorce against the plaintiff, in the district court of said county, alleging willful abandonment as grounds therefor, notice of said action being given by publication in a newspaper of the county. Said action resulted in a decree of divorce in accordance with the prayer of the petition. In the month of November, 1889, the plaintiff instituted this action in the district court of Douglas county. In her petition she asks the court (1) to vacate and annul the decree of the district court of Fillmore county, on the ground that it was procured by means of fraud and perjury, (2) for a decree of divorce and alimony on the grounds of cruelty and abandonment. Summons was served upon the defendant in Fillmore county, who first entered a special appearance in which he challenged the jurisdiction of the court over his person or the subject of the action. His challenge having been overruled by the court, Doane, judge, presiding, he filed an answer in which he renews his objection to the jurisdiction of the court. The answer contains also a general denial and other defenses which do not call for notice in this opinion. A final hearing was had before Davis, judge, upon the plaintiff's evidence, the defendant's offer of proof having been refused on account of his failure to comply with an order of the court for the payment of suit money. The hearing resulted in a finding that the decree of 1878 was not procured through fraud or upon perjured testimony, and a decree dismissing the plaintiff's petition, from which she has appealed to this court.

It is necessary to consider but one of the several questions argued, viz., the jurisdiction of the district court of Douglas county to vacate the decree of the district court of Fillmore county. It should be observed that no objection

is made to the record of the decree sought to be impeached. The district court of Fillmore county certainly had jurisdiction of the subject of the action and had acquired jurisdiction of the defendant therein in the manner prescribed by law. The decree of divorce is therefore not void in the sense that it can be assailed in a strictly collateral proceeding. A judgment or decree stands upon the same footing as any other advantage procured by fraud. It is voidable only at the election of the injured party, and not absolutely void. (Black, Judgments, 170.) It is but fair to add that there does not appear to be any difference of opinion between plaintiff's counsel and the court upon that proposition. The action to vacate and annul the decree is a recognition of its present conclusiveness. The question under consideration involves two inquiries, viz.: (1.) Is the right to vacate judgments and decrees therein included within the general equity powers of the district court, or is the remedy provided by the Code of Civil Procedure exclusive? (2.) Assuming that the petition presents a case for equitable relief, must the plaintiff's remedy be sought in the district court of Fillmore county, where the decree was rendered, or can she maintain an independent action for that purpose in the district court of Douglas county, or other court possessing general equity jurisdiction?

Referring to the inquiry first suggested, we do not hesitate to hold that the petition presents a cause for equitable interference. It is therein alleged that the defendant deserted his family in the year 1872; that the allegations in the divorce proceeding, charging the plaintiff herein with desertion, were false and made for the purpose of corruptly deceiving the court, and supported at the trial by false and perjured testimony; that she was not personally served with notice of said action and did not at the time know it was pending, and that she first learned of the whereabouts of the defendant and of said divorce proceeding about the time this action was commenced in 1889, nearly eleven years subsequent to the date of the decree.

By section 602 of the Code it is provided that the district court shall have power to vacate or modify its own judgments and decrees after the term at which they are rendered for fraud practiced by the successful party. But by section 609 it is provided that proceedings to vacate or modify a judgment or decree on the ground of fraud must be commenced within two years after the rendition thereof, unless the party entitled thereto be an infant, a married woman, a person of unsound mind, etc. This section appears in its present form in the Revised Statutes of 1866, hence the exception in favor of married woman can have no force at this time, in view of subsequent statutes removing the disabilities imposed upon them by the common law. It is provided by section 82 that a party against whom a judgment has been rendered without other service than in a newspaper may have the same opened at any time within five years thereafter, etc. That provision, it was held in *O'Connell v. O'Connell*, 10 Neb., 390, is not applicable to divorce proceedings, but the force of that case as an authority, it is argued, has been weakened by subsequent decisions. However, that is a collateral question and foreign to the present inquiry. It will be seen from what has been said that the plaintiff is without relief if the remedy provided by the Code is held to be exclusive. It is a fundamental rule of equity that where courts of chancery have once assumed jurisdiction over a particular class of cases it will not be ousted therefrom simply because, in the development of legal means, redress becomes attainable at law. (Story, Eq., sec. 64*i*, and note; Bispham, Eq., p. 57.) And that principle is distinctly recognized in section 901 of the Code, viz: "Rights of civil action given or secured by existing laws shall be prosecuted in the manner provided by this Code, except as provided in the following section. If a case ever arise in which an action for the enforcement or protection of a right or the redress or prevention of a wrong cannot be had under this Code, the practice hereto-

fore in use may be adopted so far as may be necessary to prevent a failure of justice."

The provisions of the Code being inadequate, it follows that the remedy afforded by courts of equity is still available to the plaintiff. The subject under discussion might have been dismissed by a reference to the case of *Wisdom v. Wisdom*, 24 Neb., 551, but for the reason that it is not apparent from the statement thereof whether or not the legal remedies provided by the Code were available to the plaintiff at the time the action was commenced.

2. Is the action cognizable by the district court of Douglas county? It is apparent that the cause of action is primarily to vacate the prior decree, and that the petition for divorce is but an incident thereto, upon the evident theory that the court, having once acquired jurisdiction, will retain it for the purpose of such equitable relief as the plaintiff is entitled to. (Adams, Equity, 7th Am. ed., 418.) This case differs essentially upon principle from one in which the beneficiary of a fraudulent judgment or decree has undertaken to assert a right thereunder. In such case, whether it be by means of an execution or an action, fraud which inheres directly in the judgment or decree may be interposed as a defense. Here, however, the decree is assailed by the defendant therein in the first instance in a collateral proceeding.

According to the practice which formerly prevailed in the courts of chancery, a decree, when once enrolled, could be set aside or impeached at the instance of the parties thereto only upon a bill of review or a bill to impeach on the ground of fraud. Before the enrollment thereof the remedy was by supplemental bill in the nature of a bill of review. (Adams, Eq., 416*; 2 Madd., Chancery, 537*.) But according to the modified form of the chancery practice as it prevails in the equity courts of this country, the term bills of review is used in a more comprehensive sense and includes supplemental bills of the same nature and

bills to impeach on the ground of fraud. (Story, Eq. Pl., secs. 403, 428; Black ,Judgments, sec. 301.) Considerable contrariety of opinion is apparent from the earlier cases, as well as text-books, upon the question whether bills of review and bills to impeach upon the ground of fraud are or are not original bills. A citation of the cases or even the views of text-writers in this connection would not be profitable.

The conflict of opinion upon the subject is sufficiently illustrated by reference to two leading American authors. In Willard's Equity, page 1C3, such bills are treated as strictly original bills, while in Story's Equity Pl., secs. 18, 20, 21, they are classed with those bills which " are for the purpose of cross-litigation, or of controverting or suspending or reversing some decree or order of the court or carrying it into execution," and therefore not original bills. Other writers treat them as bills in the nature of original bills. (Harrison, Prac. in Chancery, 166.) The writer has, during an examination of all of the authorities attainable, found no reported case in which the power of a different court, although possessing the same general jurisdiction with respect to the subject-matter, has been invoked to impeach a decree on the ground of fraud in accordance with the practice in the courts of chancery. In short, the terms original bill and bill in the nature of an original bill are used by the judges and text-writers in a restricted sense and refer to the character of the pleading rather than that of the action or proceeding to which they apply. The view just expressed finds support in Willard's Eq., p. 163, where it is said : " There is no case in which equity has ever undertaken to question the judgment of another court for mere irregularity. The power in such case is always exercised by the court in which the judgment was given and the relief is frequently granted upon terms." The term irregularity as here used evidently includes fraud as well as such other acts or omissions as render the judgment void

or reversible at the election of the unsuccessful party. (*Fischer v. Langbein,* 103 N. Y., 84; Black, Judgments, 170.)

Our conclusion is that the district court of Douglas county did not have jurisdiction of the cause of action. The decree, therefore, should be reversed and the action

DISMISSED.

THE other judges concur.